# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN



GERALD C. MANN
ATTORNEY GENERAL

Honorable Shelburne H. Glover
County Attorney
Marion County
Jefferson, Texas

Dear Sir:

Opinion Number 0-4618

Re: Under the provisions of H.B. #6,
Sec. 6, Subsection (h) Special Ses-
sion, 47th Leg., is it mandatory
that the funds allocated by the State
to Marion County be applied on the
maturing interest and principal of the
bonded indebtedness or may the county
pay such maturing installments of the
bond issue from its ad valorem taxes
and use the State funds for the con-
struction or improvement of additional
County Lateral Roads?

We acknowledge receipt of your opinion request of
recent date and quote from your letter as follows:

"Marion County has outstanding bonded indebt-
edness, the proceeds of which were used in con-
structing and improving State designated high-
ways and Lateral Roads in the approximate
proportions of 62% and 38%. To the extent of
the 62% such bonds are eligible obligations en-
titled to participate in the County and Road
District Highway Fund under the Act. Such bonds
to the extent only of 38% thereof may participate
in the Lateral Road Funds.

"The county has made a tax levy sufficient to
meet the interest and principal maturing next year

on the 38% chargeable to the Lateral Road
Fund Account. Assuming there will be funds
available to the county from the State Lateral
Road Account mentioned in the Assumption Act,
there will result a surplus of funds necessary
to pay the maturing installments of interest
and principal on the 38% of the bond issue
above mentioned.

"In view of the above quoted provisions of
Section 6, Subsection (h) of the Act, is it
mandatory that the funds allocated by the State
to Marion County be applied on the maturing int-
erest and principal of the bonded indebtedness
or may the county pay such maturing installments
of the bond issue from its ad valorem taxes and
use the State funds for the construction or im-
provement of additional County Lateral Roads?"

House Bill #6, Acts of the First Called Session, Forty-
seventh Legislature, commonly referred to as the "Road Bond
Assumption Act", provides in Section 6, Subsection (h) as fol-
lows:

"The moneys allocated to each county from the
lateral road account shall be used by said county
first for paying the principal, interest, and sink-
ing fund requirements maturing during the fiscal
year for which such money was allocated to such
county on bonds, warrants, and other legal obli-
gations issued prior to January 2, 1939, the pro-
ceeds of which were actually expended in acquiring
right of ways for State designated highways, it
being the intention of the Legislature to designate
and set apart sufficient money to pay off and dis-
charge said outstanding obligations incurred for
right of way acquisition. The board shall require
from each county a sworn statement of the outstand-
ing right of way indebtedness incurred on State de-
signated highways and in the event a false statement
is furnished the board by any county, or where any
county fails or refuses to file a report, then such

county shall be denied any benefits under this
Section; it being the duty of the board before
distributing any funds to any county under this
Section where such county submits a report that
it has no right of way indebtedness, or where
said report is vague or indefinite, to audit and
determine the correctness of such report. Funds
remaining in the Lateral Road Fund of any county
after the payment of said right of way obligations
shall be used by the county for paying the maturing
principal, interest, and sinking fund requirements,
due by the county in that fiscal year on bonds, war-
rants, or other evidences of indebtedness which
were legally issued by such county or road districts
prior to January 2, 1939, the proceeds of which were
actually expended in the construction or improvement
of lateral county roads. Payment to be made ratably
upon the principal and interest on the maturing road
bond obligations of said county for such fiscal years.
Any funds remaining in the Lateral Road Fund of any
county after the payment of said principal, interest,
and sinking fund requirements due or maturing in that
fiscal year on bonds or warrants which were legally
issued by such county or road district prior to Jan-
uary 2, 1939, the proceeds of which were actually
expended in the construction or improvement of lateral
county roads, may be used by the county under direction
of the Commissioners Court for any one or all of the
following purposes: (a) for the acquisition of right
of ways for county lateral roads and for the payment
of legal obligations incurred therefor prior to Jan-
uary 2, 1939, (b) for the construction or improvement
of county lateral roads, (c) for the purpose of supple-
menting funds appropriated by the United States Gov-
ernment for Works Progress Administration highway con-
struction, Public Works Administration highway con-
struction, and such other grants of Federal funds as
may be made available to the counties of this State
for county lateral road construction, and (d) for the
purposes of cooperating with the State Highway Depart-
ment and the Federal Government in the construction
of farm-to-market roads."

After a careful reading of House Bill #6, and particularly Section 6, Subsection (h), we interpret the law to mean, that moneys allocated to each county from the Lateral Road Account shall be used by said county, first, for paying the principal, interest and sinking fund requirements maturing during the fiscal year for which such money was allocated to such county on bonds, warrants and other legal obligations issued prior to January 2, 1939, the proceeds of which were actually expended in acquiring rights-of-way for State designated highways; second, funds remaining in the Lateral Road Fund of any county, after the payment of said right-of-way obligations, shall be used by the county for paying the maturing principal, interest and sinking fund requirements due by the county in that fiscal year on bonds, warrants or other evidences of indebtedness issued prior to January 2, 1939, the proceeds of which were actually expended in the construction or improvements of lateral county roads; third, any funds remaining in the Lateral Road Fund of any county after the payment of said principal, interest and sinking fund requirements, due or maturing in that fiscal year on bonds or warrants legally issued prior to January 2, 1939, the proceeds of which were actually expended in the construction or improvement of lateral county roads, may be used by the county under direction of the Commissioners' Court "(b) for the construction or improvement of county lateral roads".

The sinking fund which you mention in your letter can only be used to pay interest and principal requirements of the bonded indebtedness for which the tax levy was made. We are of the opinion that if the Commissioners' Court elects to pay the interest and principal of all bonds and warrants maturing during the current fiscal year out of said sinking fund, the money in the Lateral Road Fund could be used for the construction and improvement of county lateral roads, because all principal and interest payments would have been met for the current fiscal year and there would be funds remaining in the Lateral Road Fund which could be used "for the construction or improvement of county lateral roads". However, all principal and interest payments maturing in the current fiscal year must be paid as provided in Section 6, Subsection (h), supra, before any of the funds remaining in the Lateral Road Fund may be spent for the construction and improvements of additional county lateral roads.

Trusting that this answers your question, we are

Very truly yours

ATTORNEY GENERAL OF TEXAS

By _____
Claud O. Boothman
Assistant

COB-s

APPROVED JUL 3, 1942

_Gerald C. Mann_

ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY _____
CHAIRMAN